IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Carla DeBarr, <br><br> Plaintiff, <br><br> v. <br><br> Maximus Inc., a/k/a Maximus Health Care, <br><br> Defendant. | C/A No. 3:20-cv-01795-SAL <br><br><br> **OPINION AND ORDER** |

This matter is before the court for review of the July 6, 2021 Report and Recommendation of United States Magistrate Judge Shiva V. Hodges (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). [ECF No. 27.] In the Report, the Magistrate Judge recommends that the court grant Defendant's motion for summary judgment. For the reasons set forth below, the court adopts the Report in its entirety.

## BACKGROUND

This action was brought by Plaintiff against her former employer, Maximus Inc., ("Defendant"). Plaintiff is a registered nurse and worked as nurse review auditor for Defendant. *See* Pl. Aff. ¶ 2. Plaintiff was demoted and then removed from a project ("the RVC project") she was working on for Defendant's client, Capitol Bridge, LLC ("Capitol Bridge"). Thereafter, she was terminated by Defendant. The specific facts are set forth in the Report, and the court will not repeat them here.

On April 1, 2020, Plaintiff filed the instant action against Defendant in state court, alleging (1) interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29

1

U.S.C. § 2601, *et seq.*, and (2) breach of contract in violation of South Carolina law.  *See* [ECF No. 1-1.]  Defendant removed the case to federal court on May 7, 2020.  [ECF No. 1.]  On May 13, 2021, Defendant moved for summary judgment on all claims.  [ECF No. 17.]  Thereafter, Plaintiff filed her response in opposition, and Defendant submitted a reply.  [ECF Nos. 19, 22.]  On July 6, 2021, the Magistrate Judge issued her Report recommending the court grant Defendant's motion for summary judgment on all claims.  [ECF No. 27.]  Plaintiff timely filed her objections to the Report, ECF No. 30, Defendant replied, ECF No. 31, and the matter is ripe for review by the court.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  *See* 28 U.S.C. § 636(b)(1).  A district court, however, is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992).  In the absence of specific objections to portions of the Report, this court is not required to provide an explanation for adopting the recommendation.  *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'"  *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 n.6 (D.S.C. 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)).  A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint

or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for clear error." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

## DISCUSSION

Plaintiff objects to the Magistrate Judge's recommendation that the court grant summary judgment in Defendant's favor on her claims for FMLA interference, FMLA retaliation, and breach of contract. Plaintiff also objects to the Report's admission of hearsay evidence. The court will first address Plaintiff's evidentiary objection before turning to Plaintiff's objections to the Report's recommendations as to her three claims.

### I. Hearsay Evidence

Plaintiff argues that the Magistrate Judge erred in allowing hearsay evidence when she admitted emails from Capitol Bridge raising concerns about Plaintiff's performance on its project. [ECF No. 30 at 8.] Plaintiff further argues that the Report erred in using the allegations contained in the emails for the truth of the matter asserted. *Id.*

The court does not find any error in the Magistrate Judge's admission of the emails, which she admitted to show that Defendant's actions were motivated by client complaints and demands. *See*

[ECF No. 27 at 16.] The Report correctly found that evidence of client complaints and demands is admissible when offered to show the employer's state of mind. *See id.* at 16–17; *Arrington v. E.R. Williams, Inc.*, 490 F. App'x 540, 543 (4th Cir. 2012) ("Where, as here, 'third-party statements concerning the plaintiff's performance are offered not for the truth of the matters asserted therein, but as an explanation of why [the employer] believed that terminating the plaintiff's employment . . . was necessary and appropriate,' evidentiary rules governing the consideration of hearsay are not implicated.") Furthermore, the Report noted that the evidence is also admissible under the business records exception, *id.* at 17 n.7, and Plaintiff does not object to this finding. Accordingly, Plaintiff's objection to the admission of the email evidence is overruled.

Next, the court addresses Plaintiff's argument that the Magistrate Judge improperly considered the email evidence for the truth of the matters asserted. *See* [ECF No. 30 at 8.] Plaintiff, however, fails to identify where in the Report the Magistrate Judge assumed the truth of Capitol Bridge's complaints about her performance. Moreover, Plaintiff contends that the emails provide the only evidence of her alleged poor-performance issues. *Id.* This is simply not the case. As the Report explains, Defendant introduced "'ample evidence'" that it demoted and then terminated Plaintiff as a result of Capitol Bridge's complaints. [ECF No. 55 at 20–21.] This evidence includes the declaration of her supervisor Frank Wolf ("Wolf") that Capitol Bridge raised "ongoing complaints" about Plaintiff's performance and twice requested that she be removed from the project. Likewise, the record also included Plaintiff's own admissions that she missed meetings and was aware the client had raised concerns about her. *Id.*; [ECF No. 17-10 (Wolf Decl.); ECF No. 31 at 2–4 (Def.'s reply describing the declarations, testimony, recorded statements, and admissions supporting its proffered reasons).] In sum, the Magistrate Judge did not improperly admit or assume the truth of the matter asserted in the Capitol Bridge emails, and Plaintiff's

4

objection is overruled.

## II. FMLA Interference Claim

Plaintiff bases her interference claim on her alleged right to be restored to the same position she held prior to taking leave or to an equivalent position upon her return from leave. *See* [ECF No. 13–14]; 29 U.S.C. § 2614(a)(1)(B). However, the FMLA does not afford employees an absolute right to such restoration, and "an employer may deny restoration when it can show that it would have discharged the employee in any event regardless of the leave." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 723 (4th Cir. 2013); *see also Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 546 (4th Cir. 2006); 29. U.S.C. § 2614(a)(3)(B).

In her objections, Plaintiff argues that, even if Capitol Bridge notified Defendant on the last day of Plaintiff's FMLA leave that it no longer had a position for her on its team, Defendant was still required to place her in an equivalent position. [ECF No. 30 at 15.] This argument, however, assumes that Plaintiff was entitled be restored to her position upon her return from leave. The Report considered and rejected Plaintiff's restoration argument, correctly finding there is ample evidence that Plaintiff would have been demoted and discharged from the RVC project based on client complaints, regardless of whether she had taken the FMLA leave— including evidence that Capitol Bridge twice asked for Plaintiff to be removed from the RVC Project and Plaintiff's own recordings, which contained admissions by her that she missed meetings and was aware that the client had raised concerns about her. *See* [ECF No. 27 at 20 (citing *Laing*, 703 F.3d at 724)].

Further, the record reflects that following her discharge from the RVC project, Plaintiff would have been terminated regardless of whether she had taken leave because there were no open positions for which she was qualified. Although Plaintiff argues that there was an open position available, she points only to Scott Garrison's testimony that an open position existed in late 2019

that "may have been the Plaintiff's old position or another position." *See* [ECF No. 30 at 14; ECF No. 27 at 18 (quoting ECF No. 19-25 at ¶¶ 3–4).] The court agrees with the Report's assessment that this testimony is insufficient to demonstrate that there *was* an open position (other than her old position) that Defendant could have placed her in during the relevant period in this action. *See* [ECF No. 27 at 19.]

After careful consideration of Plaintiff's objections and a *de novo* review of this portion of the Report, the court adopts he Report's recommendation to grant summary judgment in favor of Defendant on Plaintiff's FMLA interference claim

### III. FMLA Retaliation Claim

To succeed on a claim of FMLA retaliation, a plaintiff must show "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016). The plaintiff can demonstrate retaliation through direct evidence of retaliation or through the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), burden-shifting framework. *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021). In the Report, the Magistrate Judge recommends granting summary judgment in favor of Defendant because Plaintiff did not provide direct evidence of retaliation or demonstrate, under the *McDonnell-Douglas* framework, that Defendant's proffered reason for its adverse employment actions were pretextual.

#### A. Capitol Bridge's Intent

Plaintiff raises several objections to the Report's analysis of her retaliation claim. But the majority of the objections are unrelated to *Defendant's* intent or asserted reasons for her termination. Instead, Plaintiff focuses on the intent of Defendant's *client*. She argues that the

6

Report ignored evidence that Capitol Bridge's requested removal of Plaintiff from the project was pretextual. Specifically, she argues that Capitol Bridge disapproved of her leave and wanted her removed from the project because she was likely to need more leave in the future. *See* ECF No. 30 at 4–7, 8–11. A FMLA retaliation claim, however, focuses on the intent of the *employer* in taking the adverse action against the employee. *See Sharif*, 841 F.3d at 203. Thus, as set forth in the Report, the issue in the instant action is whether *Defendant*'s proffered reasons for demoting Plaintiff, removing her from the RVC project and then terminating plaintiff, are pretextual.

Plaintiff also attempts to hold Defendant responsible for the alleged improper motive of its client, Capitol Bridge, under a joint liability theory. *See* [ECF No. 30 at 11–13.] Under this theory—raised for the first time in her objections—Plaintiff asserts that Capitol Bridge and Defendant are joint employers and thus Defendant is liable for acquiescing to Capitol Bridge's demands that she be removed from the project in violation of the FMLA. *See id.* This new theory of liability, however, is untimely. It was not raised in Plaintiff's complaint, briefed by the parties at any point, nor addressed by the Magistrate in her Report, and the court agrees that it would cause Defendants unfair prejudice to consider it at this stage. *See* ECF No. 31 at 14; *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.,* 262 F. App'x 556, 563 (4th Cir. 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))). Accordingly, the court declines to consider Plaintiff's newly raised joint-employment argument and overrules her objection suggesting that the Report erred by failing to consider a joint-employment theory of liability.

**B. Direct Evidence of Retaliation**

Plaintiff objects to the Report's finding that a single comment in a 2018 employment

evaluation—concerning an unrelated account—did not constitute direct evidence in support of her retaliation claim. [ECF No. 27 at 22.]. The Fourth Circuit provides that direct evidence "encompasses conduct or statements that both (1) reflect directly the alleged [retaliatory] attitude, and (2) bear directly on the contested employment decision." *Johnson*, 839 F.App'x at 783. And "in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." *Id.*

The adverse employment actions Defendant took in this case (demotion, discharge, and termination) relate only to Plaintiff's work on the RVC project for Capitol Bridge. Plaintiff did not begin working on the RVC project or Capitol Bridge account until 2019. As the Report emphasized, the 2018 comment at issue, which referenced unscheduled leave events and recommended unscheduled leave be kept to a minimum, was unrelated to the RVC Project and was made by an individual who was not involved in the decision to demote/remove Plaintiff from the RVC project or terminate her employment. [ECF No. 27 at 22.]. The court agrees that this comment fails to provide direct evidence in support of Plaintiff's retaliation claim.

Additionally, Plaintiff suggests that Capitol Bridge's asserted performance issues are direct evidence of retaliatory animus toward her taking protected FMLA leave, but she fails to explain how the comments reflect Defendant's animus. *See* [ECF No. 30 at 13.] To the extent Plaintiff relies on the temporal proximity of the asserted performance issues and her demotion or removal from the RVC project, the Report correctly found that this evidence is not direct evidence, but rather evidence that bears on the *McDonnell-Douglas* burden-shifting framework. [ECF No. 27 at 23.] The court finds no basis for disturbing the Report's finding that Plaintiff did not provide direct evidence of retaliation.

    **C.** ***McDonnell-Douglas*** **Framework.**

Because the Plaintiff failed to provide direct evidence of retaliation, the Report went on to analyze her claim under the *McDonnell-Douglas* burden-shifting framework. Therein, the Report assumed without deciding, that Plaintiff had stated a *prima facie* case of retaliation. *See id.* at 24. The Report ultimately recommended summary judgment in favor of Defendant because it proffered a legitimate non-retaliatory reason for its actions, and Plaintiff failed to establish that the reason was pretextual. *Id.* at 24–25. To the extent that Plaintiff suggests her temporal proximity evidence is sufficient to survive summary judgment, the argument is inapt. *See* [ECF No. 30 at 12 n.3.] As the Report explained, evidence of close temporal proximity may satisfy Plaintiff's burden of establishing her *prima facie* case of retaliation, but she still must demonstrate that her employer's proffered reason for the adverse employment action is pretextual. [ECF No. 27 at 23.]; *see Waag v. Sotera Def. Sols.*, Inc., 857 F.3d 179, 192 (4th Cir. 2017) (agreeing that "for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation," but noting the plaintiff "still 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" (quoting *Yashenko*, 446 F.3d at 551)).

And here, Plaintiff offers no other evidence in support of her pretext argument beyond what the Report already considered and rejected, and she points to no specific error in the Report's analysis. *See* [ECF No. 27 at 25 (finding "Plaintiff's perception of herself, her past performance reviews, and temporal proximity are insufficient to defeat Defendant's motion" (citing *Mercer v. Arc of Prince Georges Cty., Inc.*, 532 F. App'x 392, 397 (4th Cir. 2013))).] After a careful review of Plaintiff's objections, the court finds no basis for disturbing the Magistrate Judge's recommendation. Accordingly, the court grants Defendant's motion for summary judgment on Plaintiff's retaliation claim.

9

**IV. Breach of Contract Claim**

Under South Carolina law, an employee's at-will employment status can be altered by contract—including by the terms of an employee handbook. *See Grant v. Mount Vernon Mills, Inc.*, 634 S.E.2d 15, 20 (S.C. Ct. App. 2006) ("When the at-will status of an employee is altered by the terms of an employee handbook, however, a contract may arise allowing for a cause of action for wrongful discharge."). Plaintiff objects to the Report's finding that Defendant's employee handbook did not contractually alter the terms of her at-will employment. *See* [ECF No. 30 at 14.]

Plaintiff argues that the handbook provides "steps for termination or discipline" and expresses Defendant's *desire* to "provide employees with a consistent, and fair disciplinary process," thereby creating an implied covenant of good faith and fair dealing. *Id.* at 15. However, a "handbook or policy cannot alter the at-will employment relationship if it is 'couched in permissive language' such as 'normally' and 'should.' To be considered mandatory language, the purported contract must be 'definitive in nature, promising specific treatment in specific situations.'" [ECF No. 27 at 28–29 (citing *Grant*, 634 S.E.2d at 20; *Anthony v. Atl. Grp., Inc.*, 909 F.Supp 2d. 455, 467 (D.S.C. 2012).] And here, as in her response to Defendant's Motion, Plaintiff fails to identify how her termination process violated any *mandatory* terms found in the handbook. Moreover, Defendant's handbook also contains an express provision that "[e]mployment with [Defendant] is terminable at will; there is no requirement that an employee receive a warning or documentation prior to termination." *Id.* at 30.

Plaintiff has failed to point to evidence supporting her breach of contract claim, and the court overrules her objection. Accordingly, the court grants Defendant's motion for summary judgment on Plaintiff's breach of contract claim.

10

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the court adopts the Report, ECF No. 27, in its entirety and incorporates the Report by reference herein. As a result, Defendant's motion for summary judgment, ECF No. 17, is **GRANTED**.

**IT IS SO ORDERED.**

March 22, 2022
Florence, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge